UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**HARD METAL ADVANTAGE L L C**            **CASE NO.  6:20-CV-01702**

**VERSUS**                                **JUDGE JUNEAU**

**KENNAMETAL INC**                        **MAGISTRATE JUDGE PATRICK J. HANNA**

## REPORT AND RECOMMENDATION

This Court issued its first report and recommendation in this case on December 10, 2021, recommending the grant of defendant's motion to transfer, as well as the denial of defendant's motion to dismiss.[1]  *Sua sponte*, this Court raised the issue of transfer of Plaintiff's remaining claims pursuant to 28 U.S.C. § 1404(a).[2] By judgment issued January 12, 2022, the Court, speaking through U.S. District Judge Juneau, adopted the report and recommendation and ordered the parties to file briefs addressing transfer of all remaining claims.[3]  The Court referred the *sua sponte* issue of § 1404(a) transfer to the undersigned for issuance of report and recommendation pursuant to 28 U.S.C. § 636.[4]  This Court reviewed the briefs filed by the parties, as well as applicable law and jurisprudence and, for the reasons

---

[1]    Rec. Doc. 20.
[2]    *Id.* at pp. 8-10.
[3]    Rec. Doc. 23.
[4]    *Id.*  The parties were notified of the Court's intention to take up this issue and provided an opportunity to submit briefs addressed to prospective transfer of all remaining claims under § 1404(a).  *Moler v. Wells*, 18 F.4th 162, 167-68, n. 10 (5h Cir. 2021) citing *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (6th Cir. 1987); *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989).

expressed below, recommends transfer of all remaining claims in this case to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

## I.    Background

As discussed in depth in this Court's previous report and recommendation, plaintiff Hard Metal Advantage, LLC ("HMA" or "Plaintiff") is a Louisiana LLC which owns U.S. Patent No. D649,987 ("the '987 Patent") entitled "Carbide Chip" and U.S. Trademark No. 5,404,194 ("the '184 Trademark").[5]    HMA manufactures, sells and services "certain tools and equipment including, without limitation, mills and other tools used in downhole oil and gas production."[6]   The patented Carbide Chip is a "six-sided or hexagonal chip" installed on "downhole mills and other similar tools."[7]   The '184 Trademark is drawn to trade dress for the Carbide Chip.[8]

Plaintiff's suit alleges defendant Kennametal Inc. ("Kennametal"), manufactured, sold, and distributed a product in violation of HMA's patent and trademark, constituting willful infringement and causing irreparable harm.[9]  Plaintiff further alleges Kennametal maintains a regular and established place of business

---

[5]     Rec. Doc. 1 at ¶ 6.
[6]     Rec. Doc. 26 at p. 1.
[7]     *Id.*
[8]     Rec. Docs. 1 at ¶ 21, and 1-2.
[9]     Rec. Doc. 1 at ¶ 4.

within the Western District of Louisiana and engages in direct and internet sales of the offending product within the Western District of Louisiana.[10]  In addition to its patent infringement claim already discussed in the previous report and recommendation, Plaintiff's suit alleges violations of the Lanham Act,[11] pertaining to trademark and trade dress, as well as violations of Louisiana's unfair trade practice and trademark infringement law.[12]  Finding previously that transfer of Plaintiff's claim for patent infringement is required pursuant to 28 U.S.C. § 1400, this Court so recommended, but further recommended a stay of such transfer pending resolution of the issue now presented.[13]

Kennametal denies willful patent or trademark infringement in this case. Further, Kennametal avers that it acquired the alleged offending product during its 2013 purchase of the Tungsten Materials business of Allegheny Technologies Incorporated ("ATI").[14]  Kennametal asserts that ATI sold the alleged offending product "by at least 2011."[15]  Under ATI's ownership, the alleged offending product was manufactured in Texas.  Kennametal moved production of this product from

---

[10]    *Id.* at ¶¶ 4, 27-29.  This Court previously recommended transfer based, in large part, on its finding that Plaintiff failed to demonstrate Kennametal maintained a "regular and established place of business" within the W.D. La. Rec. Doc. 20 at pp. 7-8.  As above, this recommendation was adopted by Judge Juneau by Judgment issued January 12, 2022.  Rec. Doc. 23.

[11]    15 U.S.C. § 1125(a).

[12]    La. R.S. 51:1401, *et seq.*

[13]    Rec. Doc. 20.

[14]    Rec. Doc. 25 at p. 2.

[15]    *Id.*

Texas to Victoria, British Columbia in 2016.[16]    Kennametal continues to manufacture the alleged offending product in that location today, but claims it does not market, show, or dedicate resources to promoting the product.[17]    Kennametal sells the product to customers in several states and outside the United States.[18] Kennametal asserts that, since its 2013 acquisition, it sold the alleged offending product to only one (1) customer located in Louisiana and has not made any sale to any Louisiana customer since 2020.[19]    Kennametal continues to deny that its Louisiana employee is involved in any marketing, sales or promotion of the alleged offending product.[20]

## II.    Analysis

Transfer of one or more claims is warranted under 28 U.S.C. § 1404(a) when the evidence demonstrates "the transferee venue is clearly more convenient."[21] Transfer under § 1404(a) is appropriate only to a venue in which the civil action "might have been brought."[22]    Convenience is evaluated according to the following private interest factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost

---

[16]    *Id.* at p. 3.
[17]    Rec. Doc. 25 at p. 3.
[18]    *Id.*
[19]    *Id.*
[20]    *Id.*
[21]    *In re Volkswagen AG*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*").
[22]    *Volkswagen II* at 312.

of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[23]   Convenience is further evaluated according to the following public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law."[24]

A plaintiff's choice of venue is not a factor for analysis, but "corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue."[25]   When the transferee venue is not clearly more convenient" than plaintiff's chosen venue, transfer must be denied.[26]

### Private Interest Factors

At the outset, the Court notes that the parties agree that the subject claims "might have been brought" in the proposed transferee district.  The Court agrees. Defendant Kennametal is incorporated in Pennsylvania and maintains its principal place of business in Latrobe, Pennsylvania, making Kennametal subject to

---

[23]   *Volkswagen II*, at 314, quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").
[24]   *Id.*
[25]   *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) citing *Volkswagen II*, 545 Fed.3d at 314 n. 10.
[26]   *Volkswagen II* at 315.

jurisdiction within the Western District of Pennsylvania ("W.D. Pa.") pursuant to 28 U.S.C. § 1391.

Plaintiff opposes transfer of its remaining claims to the W.D. Pa.  Plaintiff asserts that its trademark infringement claims are "fundamentally different" from its patent infringement claims and, as to its trademark infringement claims, "evidence regarding Plaintiff['s]…actions will be critical to determination" of the trademark infringement claims in contrast to evidence of Kennametal's actions, central to its patent infringement claims.[27]  Plaintiff offers the declaration of Duane Dunnahoe ("Dunnahoe"), manager and sole member of HMA, in support of its argument that evidence critical to its trademark-related claims is located in the Western District of Louisiana ("W.D. La.").[28]  Specifically, Dunnahoe points out that he and two other persons presumed to be HMA employees (listed as "Ms. Jenny Dunnahoe and Ms. Erin Bell") are located in Broussard, Louisiana at HMA's principal place of business.[29]  Dunnahoe also attests that twenty-four (24) entities located in or near the W.D. La. have relevant information regarding "the use, sale and marking of goods embodying [HMA's] distinctive hex chips and related trade dress…"[30]

In contrast, Kennametal cites jurisprudence reasoning that since intellectual property disputes center on the actions of the alleged infringer, the alleged

---

[27]    Rec. Doc. 26 at p. 4.
[28]    Rec. Doc. 26-1.
[29]    *Id.* at p. 2.
[30]    *Id.* at p. 2-3.

infringer's principal place of business is often "the critical and controlling" consideration under this factor.[31]    Kennametal is incorporated in the state of Pennsylvania and has its principal place of business in the W.D. Pa.[32]

As pointed out by the Western District of Texas court in its 2019 ruling in *Beijing iQIYI Science & Technology Co., Ltd., v. iTalk Global Communications, Inc.*,[33] the salient inquiry under this factor is not the location of various proofs, but rather the relative ease of access to relevant proof.    Kennametal asserts that documentary evidence pertaining to HMA's trademark claims is stored electronically at its principal location in Pennsylvania, as well as at its facilities in Rogers, Arkansas and Victoria, British Columbia.[34]  Kennametal argues that, despite the electronic storage of these relevant proofs, their physical location outside of Louisiana weighs in favor of transfer.[35]

To prevail on a claim of trademark infringement under the Lanham Act, HMA must show two elements: (1) it possesses a legally protectable trademark; and (2) Kennametal's use of the trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship."[36]  The elements of a trademark infringement claim under

---

[31]    *Connect Ins. Agency, Inc. v. Am. Fam. Connect Ins. Agency, Inc.*, 2020 WL 9437408 (W.D. Tex. 2020).  See also *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786 (S.D. Tex. 2005) (internal citations omitted).

[32]    Doc. 12-1 at pp. 3-4 citing Decl. of Zurga at Exh. 1.

[33]    2019 WL 6876493, *10 (W.D. Tex. 2019).

[34]    Rec. Doc. 25 at p. 6.

[35]    *Id.*

[36]    *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

Louisiana law of unfair trade practices mirror those of a trademark infringement claim under the Lanham Act.[37]

The first element of both federal and Louisiana law trademark infringement claims requires Plaintiff to show it has a legally protectable trademark.  As to this first element, Plaintiff bears the burden of demonstrating that its product is "distinctive," that is, distinguished from other products by its design. Registration of a mark with the Patent and Trademark Office is prima facie evidence of the mark's validity.[38]   Regarding the second element, Plaintiff is required to show that Kennametal used its trademark in commerce without Plaintiff's consent.[39]

Given the elements of Plaintiff's federal and Louisiana law trademark infringement claims, the Court disagrees with Plaintiff's argument that this claim centers on Plaintiff's actions.  Rather, it appears trademark infringement claims are supported evenly by evidence of the nature of Plaintiff's product, as well as the actions of Kennametal in manufacturing and marketing the alleged offending product.  Evidence regarding comparison of Plaintiff's trademarked product with other marketplace alternatives is not centralized in the W.D. La.  Conversely, evidence regarding Kennametal's manufacturing and marketing of the alleged offending product may be more fairly said to be centralized in the W.D. Pa.

---

[37]    La. R.S. § 51:1401, *et seq.*; *Falcon Rice Mill, Inc. v. Community Rice Mill*, 725 F.2d 336, 343 n. 6 (5th Cir. 1984) (recognizing Louisiana's requirement of sowing "likelihood of confusion" as required under the Lanham Act).
[38]    *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (internal citations omitted).
[39]    Boston Prof'l. Hockey Ass'n., Inc. v. Dallas Cap & Emblem Mfg. Inc., 510 F.2d 1004, 1009-10 (5th Cir. 1975).

Remembering the relative nature of this inquiry, the greater concentration of relevant evidence regarding these claims is located in the W.D. La. Considering the foregoing, this Court finds this element weighs slightly in favor of transfer.

The second private interest factor, the availability of compulsory process to secure attendance of witnesses, considers the location of relevant witnesses located outside of the Court's subpoena power. Plaintiff asserts, without specifics, that a variety of "third-party contractors and others" are found within or near the W.D. La. and could not be compelled to testify if the trial were held in the W.D. Pa.[40] Kennametal asserts its witnesses all reside outside of the subpoena power of the W.D. La. court.[41] Kennametal identifies no third-party witnesses to be considered under this factor. Rather, the declaration of Nicholas Pflugh, Vice-President of Kennametal's Engineered Wear Components group, identifies a "non-exhaustive" list of seven (7) Kennametal employees who are located in Latrobe, Pennsylvania; Houston, Texas; Victoria, British Columbia; and Rogers, Arkansas.[42] HMA specifies three (3) employees and alleges "numerous individuals have direct and personal knowledge regarding the use, sale and marketing of goods embodying [HMA]'s distinctive hex chips and related trade dress…"[43] Dunnahoe's declaration names approximately twenty-four (24) entities from which representatives may

---

[40]    Rec. Doc. 26 at p. 5.
[41]    Rec. Doc. 25 at pp. 6-7.
[42]    Rec. Doc. 25-1 at p. 3.
[43]    Rec. Doc. 26-1 at pp. 2-3.

become third-party witnesses in this case.[44]  HMA fails to identify any individual from these entities who may testify, or the specific evidence expected to be provided by that individual, or even where the listed entities are located.  Based on the greater number of specific proposed witnesses with ties to W.D. Pa., the Court finds this factor weighs in favor of transfer.[45]

The third private interest factor contemplates the cost of attendance for willing witnesses.  In *Volkswagen I*, the Fifth Circuit instructed,

> when the distance between an existing venue for trial of a matter and a proposed venue under §1404 is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.[46]

The Court finds that the 100-mile rule applies, since the proposed transferee venue lies more than 100 miles from the current venue.  Specifically, Pittsburgh, Pennsylvania lies approximately 976 miles from Lafayette, Louisiana.[47]  Plaintiff lists three (3) employees, using its business address as to each named employee.[48]  As explained above, Plaintiff also lists some twenty-four (24) businesses it claims may offer representative witnesses relevant to this case.[49]  Plaintiff fails to specify

---

[44]     *Id.*

[45]     *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060 (S.D. Tex. 1998) citing *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D. Tex. 1993)..

[46]     *Volkswagen I*, 371 F.3d at 204-05.

[47]     Given Kennametal's location in Latrobe, Pennsylvania, this Court assumes that the Pittsburg division of the Western District of Pennsylvania, located in Pittsburgh, would be the specific court to which this case would be transferred, as Westmoreland County lies within the jurisdictional area of the Pittsburgh Division.  h

[48]     Rec. Doc. 26-1 at pp. 2-3.

[49]     *Id.*

how many such witnesses it proposes, what specific information each might provide, or where any such witnesses may be located.  The vague information provided by Plaintiff renders the Court unable to consider these purported witnesses in its 100-mile analysis.  Kennametal lists seven (7) employees located as follows: three (3) in Latrobe, Pennsylvania; two (2) in Arkansas; one (1) in Victoria, British Columbia; and one (1) in Houston, Texas.[50]  The relative distances between the current and proposed venue for each such witness is:

- Latrobe, Pennsylvania to Lafayette, LA:  996 miles
- Latrobe, Pennsylvania to Pittsburgh, PA: 40 miles
- Rogers, Arkansas to Lafayette, LA:        548 miles
- Rogers, Arkansas to Pittsburgh, PA:       815 miles
- Houston, TX to Lafayette, LA:             217 miles
- Houston, TX to Pittsburgh, PA:            1337 miles
- Victoria, BC to Lafayette, LA:            2641 miles
- Victoria, BC to Pittsburgh, PA:           2652 miles.

The Court gives priority consideration to key, non-party witnesses and must evaluate the importance and relevancy of information each witness may provide. When a witness must travel a significant distance to travel no matter which venue is selected, the Court will disregard such witness for purposes of the convenience analysis.[51]

---

[50]    Rec. Doc. 25-1 at p. 3.
[51]    *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).

Plaintiff's brief and supporting declaration offer no information as to the number of key, non-party witnesses it proposes to offer at trial, nor any information regarding what information such witnesses may provide. Accordingly, the Court does not consider any purported key, third party witness from among the twenty-four business entities listed by Plaintiff. The Court also notes that Kennametal names no key, third-party witness from which it seeks relevant information at trial. Given the foregoing, the Court is left to consider that each party demonstrates that three (3) employee witnesses would be inconvenienced as to each venue. Accordingly, the Court deems this factor neutral.

The fourth factor asks the Court to consider "all other practical problems that make trial of a case easy, expeditious, and inexpensive." In this case, the most important consideration regarding this factor is the prospect of piecemeal litigation, which would undeniably result if the Court retains Plaintiff's non-patent claims. Contrary to Plaintiff's representation, this Court finds that all claims asserted by Plaintiff against Kennametal involve the same facts and will require many of the same sources of proof at trial. Guided by the Fifth Circuit's instruction in *Volkswagen III*, we place high importance on avoiding the possibility of

inconsistent, piecemeal litigation of closely related claims.[52]   Accordingly, this factor weighs in favor of transfer.

***Public Interest Factors***

The Court now considers convenience according to the public interest factors. First among these is "the administrative difficulties flowing from court congestion."[53] This factor contemplates whether there is "an appreciable difference" in docket congestion in each venue.[54]   As listed in national statistical data, the average time from filing to disposition of civil cases in the W.D. La. is 7.1 months and 6.7 months in the W.D. Pa.[55]  Regarding only those cases brought to trial, the statistics reverse course, with average time to conclusion of trial in the W.D. La. at 27.5 months and 34.5 months in W.D. Pa.[56]  Fifth Circuit jurisprudence recognizes the "speculative" nature of the average duration of litigation statistics, since this data fails to completely account for important variables such as total caseloads, differences in operative case management standards, and differences in the types of cases measured across circuits and districts.[57]  Taken together, the Court finds that

---

[52]     *In re Volkswagen of America, Inc.* ("Volkswagen III") 566 F.3d 1349, 1351 (Fed. Cir. 2009) (affirming transfer of remainder claims to prevent inconsistent judgments or inefficient piecemeal litigation as a "paramount" consideration).

[53]     *Volkswagen I*, 371 F.3d at 203 citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981).

[54]     *In re Google, LLC*, 2021 WL 4427899, *7 (Fed. Cir. 2021); *In re Adobe Inc.*, 823 Fed. Appx. 929 (Fed. Cir. 2020) (citing *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963) and Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984).

[55]     https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/12/31

[56]     *Id.*

[57]     *In re Jupiter Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (citing *In re Genentech*, at 1347 and *In re Apple, Inc.*, 374 F.App'x. 997, 1344 n. 5 (Fed. Cir. 2010)).

this factor weighs slightly in favor of transfer, but will be prioritized behind other more pivotal factors.

The second public interest factor considers the "local interest in having localized interests decided at home."  Courts examining this factor are concerned not only with each party's ties to each forum, but also each forum's connection to the events at issue in the case.[58]  Considering the events at issue in this case, it is the Court's finding that the W.D. Pa. has a strong interest in deciding the issues in this case.  Plaintiff alleges Kennametal undertook a series of actions in violation of its patent and trademark, including the marketing and sale of the alleged offending product.  Plaintiff does not allege that Kennametal's sale of the alleged offending product was confined to Louisiana.  Kennametal denies any such allegation, affirmatively arguing that it conducted sales of the product to customers in other states and, indeed, outside the United States.[59]  Given these allegations, this Court believes the "center of gravity" in this case to be in the W.D. Pa., where Kennametal maintains its principal place of business and where ATI, Kennametal's predecessor in manufacturing the alleged offending product, was located.  Accordingly, this factor weighs in favor of transfer.

---

[58]    *In re Jupiter Networks, Inc.*, 14 F.4th at 1319-20 quoting *In re Apple*, 979 F.3d at 1345 (5th Cir. 2020).
[59]    Rec. Doc. 25 at p. 3.

Next, we consider the familiarity of the forum with the law to be applied. As described above, Plaintiff's federal claim for patent infringement will be tried in the W.D. Pa., which is undoubtedly able to apply federal law as to Plaintiff's federal law claims for trademark infringement under the Lanham Act. As previously noted, Louisiana's law of trademark infringement follows its federal counterpart, leading this Court to conclude that the W.D. Pa. is able to apply Louisiana law in this case with relative ease.

The final public interest factor regards the avoidance of unnecessary problems of conflict of laws in the application of foreign law. As asserted by Kennametal, Pennsylvania's law of trademark infringement mirrors the Lanham Act also, eliminating potential conflicts of laws issues regarding application of Louisiana law, which also mirrors the Lanham Act. Plaintiff fails to demonstrate a reasonable likelihood that any conflict of laws issues will arise in this case. Accordingly, this Court finds this factor weighs in favor of transfer.

Taken together, the public and private interest factors analyzed above weigh in favor of transfer in this case. As courts have found in other patent infringement cases, the relatively small presence of the Plaintiff in the transferor venue is not sufficient to overcome Kennametal's larger presence in the proposed transferee venue and its strong ties to its principal place of business as a "center of gravity" of the alleged infringement. Moreover, despite the fact that Kennametal's production

and sales are scattered between British Columbia and Arkansas, its headquarters may still be fairly considered a "hub" for the many decisions and actions which Plaintiff alleges infringed upon its patent and trademark.[60]  For the convenience of the parties[61] and interest of justice, this Court will recommend transfer of Plaintiff's remaining claims in this suit to the U.S. District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

## III.    Conclusion

Based on the above analysis of the relevant public and private interest factors, this Court recommends that all remaining claims by Plaintiff be transferred to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).  It is further recommended that the stay of transfer as to Plaintiff's patent infringement claim be lifted, enabling transfer of the entire suit accordingly.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

---

[60]    *Heerema Engineering Svs., B.V. v. Transocean, Inc.*, 2008 WL 1766976 (W.D. La. 2008); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F.Supp.2d 607 (E.D. La. 2000) ("'[a]s a general rule, in patent infringement cases 'the preferred forum is that which is the center of gravity of the accused activity'" (quoting *Laitram Corp. v. Morehouse*, 31 U.S. P.Q.2d 1697, 1700 (E.D. La. 1994); *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 WL 21251684, *3 (N.D. Tex. 2003) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1188 (N.D. Ill. 1983)).

[61]    This Court notes again that neither party identifies any specific third-party witness, nor the nature of any evidence to be obtained from any such witness.  Thus, all witnesses considered are party witnesses, as they are employees of HMA or Kennametal.

16

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 22nd day of March, 2022.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE